STATE OF NEBRASKA, APPELLEE, V. GREG ALLEN SULLIVAN, APPELLANT.
461 N.W.2d 84

Filed October 5, 1990.    No. 89-1213.

Richard L. Kuhlman for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

After trial to a jury the defendant, Greg Allen Sullivan, was convicted of robbery and sentenced to 10 to 15 years' imprisonment with 40 days' credit for time served. He has appealed and has assigned the following errors: (1) The trial court erred in overruling his motion in limine, (2) the trial court erred in admitting the hearsay testimony of Steve Wickman, and (3) the trial court abused its discretion by imposing an excessive sentence upon him.

The record shows that on December 23, 1988, at approximately 7 p.m. a man entered Pete's Place located north of Fremont, Nebraska. He was wearing dark-green coveralls, a blue ski mask, and brown cloth gloves. The man told Pamela Shinaut Redding, who was working at that time, to give him all of the money. Redding refused, and the man came around the counter and opened the cash register. When Redding slammed the cash drawer on the man's hand, he hit her with a plastic gun. When he opened the drawer again, Redding again slammed the drawer on his hand. The man then pushed Redding back and asked her if she wanted to die. He removed $180 in 20-dollar bills from the cash register and left the store.

After following the man into the parking lot, Redding ran back into the store and dialed 911. She reported the incident,

what the robber was wearing, his physical characteristics, and that she thought his license plate was 5B9534. She first described the car as a blue Chrysler, but later said that it was a dark-blue Ford Fairmont that was very dirty.

Officer Terry Duffy, after hearing a radio report of the robbery, waited north of Fremont for the suspect's vehicle to pass by. After he had started back to Fremont, he met Wickman, who flashed his headlights and indicated that he wanted Officer Duffy to stop. Wickman said that he had just been at Pete's Place and saw the robber's car leaving as he pulled into the parking lot. After Wickman learned of the robbery, he tried to follow the robber's car but lost it in traffic. Officer Duffy told Wickman that the police were looking for a Ford Fairmont, but Wickman told Duffy that the suspect's car was not a Fairmont but was another Ford product. The officer suggested the car might be a Thunderbird, and Wickman said that was what he was trying to think of and that it was an early 1980's model. Officer Duffy then radioed in this information.

Officer Duffy testified to these facts at trial. Prior to Officer Duffy's testimony before the jury, the defendant moved in limine to exclude the testimony relating to Wickman's remarks on the ground it was hearsay. The motion was overruled, and Duffy was allowed to testify on the basis of the excited utterance exception to the hearsay rule.

At about 7:16 p.m. on the night of the robbery, Officer Terry Mohler stopped the defendant west of Fremont because the defendant was driving a car that matched the description of the car used in the robbery, his dark-blue 1980 Ford Thunderbird.

Subsequent to the robbery, Redding identified the defendant's car as similar to the one that the robber drove, and she identified the defendant's voice as the robber's from two separate tape-recorded voice exemplars.

The clothes worn by the robber were found in a ditch north and west of Fremont, in the vicinity of the place where Officer Mohler had stopped the defendant. Redding identified the clothing as that worn by the robber. After initially denying that he recognized the clothing, the defendant admitted later that the clothing belonged to him.

The clothes, along with hair, blood, and saliva samples taken

from the defendant, were sent to the State Patrol Criminalistics Laboratory. The serologist who performed tests on these items testified that a hair found on the ski mask was from a human Caucasian head and was quite distinctive and that the defendant's samples had the same features. She also testified that saliva or mucus found on the glove was from a nonsecretor, which nonsecretors constitute 25 percent of the population, and that the defendant's sample showed that he is a nonsecretor.

The defendant's first assignment of error is without merit. The denial of a motion in limine is not an appealable order and does not, in and of itself, constitute reversible error. *State v. Tomrdle*, 214 Neb. 580, 335 N.W.2d 279 (1983).

The defendant did, however, object to the testimony of Officer Duffy prior to Officer Duffy's testimony before the jury. The issue is whether it was error for the trial court to admit the testimony of Officer Duffy concerning what Wickman had said regarding the car driven by the robber.

The defendant argues that Wickman's statements to Officer Duffy should not have been admitted because Wickman was not the person who was robbed, the description of a Thunderbird resulted from "cross-examination" by a police officer, and Wickman was not cooperative because he failed to obey a subpoena and testify at trial.

In concluding that Wickman's statements to Duffy were admissible under the excited utterance exception to the hearsay rule, Neb. Rev. Stat. § 27-803(1) (Reissue 1989), the trial court stated:

> This condition that must exist to determine if it's an excited utterance is set forth in State versus Lee, which is 216 Nebraska, Page 63. The first condition is there must have been a startling event. I find that there was a startling event; ie, [sic] the robbery, and Mr. what's-his-name, Wickman, coming upon the scene.

> Two, the State [sic] must relate to that event, the statement of Mr. Wickman to the officer in regards to the description of the car, and those facts certainly do relate to the events. And three, the State [sic] must have [been] made, while the declarant [sic] was under the distress of an exciting event. This statement was made approximately

five minutes after the startling event, and the testimony of the officer indicates to the court that the defendant — that the declarent [sic] was still under the stress of the exciting event.

In addition to the elements stated by the trial court, in our analysis of the excited utterance exception in *In re Interest of R.A. and V.A.*, 225 Neb. 157, 162-63, 403 N.W.2d 357, 362-63 (1987), we stated:

The excited utterance exception is based on the common-law res gestae exception. . . . The underlying theory of the exception is that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." . . . Spontaneity is the key factor in determining whether a statement falls within the exception. . . .

. . . .

The contemporaneous requirement, in the res gestae context, traditionally meant the statement was made while the exciting event was still in progress. The spontaneity requirement meant the statement was made while the declarant was still under the influence of the exciting event and the statement was an unreflected statement concerning the event.

(Citations omitted.)

Spontaneity remains a key requirement for the excited utterance exception and is demonstrated by a "showing the statements were made without time for conscious reflection." *Id.* at 166, 403 N.W.2d at 364.

In this case, the spontaneity of Wickman's statement to Officer Duffy regarding the model of the robber's car is questionable. Officer Duffy's testimony shows that Wickman said that the robber drove a Thunderbird only after Officer Duffy had suggested that model. This shows that Wickman made the statement after time for conscious reflection. We believe the trial court erred in finding that Wickman's statements to Officer Duffy were admissible under the excited utterance exception.

However, even though the trial court erred in admitting

Officer Duffy's testimony regarding Wickman's statements, "improper admission of evidence constitutes harmless error where the evidence is cumulative and there is other . . . evidence to support the conviction." *State v. Rowland*, 234 Neb. 846, 853, 452 N.W.2d 758, 763 (1990).

In *State v. Lee*, 216 Neb. 63, 341 N.W.2d 600 (1983), quoting *State v. Russ*, 191 Neb. 300, 214 N.W.2d 924 (1974), the trial court refused to declare a mistrial following the introduction, over objection, of evidence of other crimes. Since there was, however, other overwhelming evidence to conclusively establish the defendant's guilt, the error was harmless beyond a reasonable doubt.

In *State v. Reed*, 201 Neb. 800, 807, 272 N.W.2d 759, 763 (1978), improper hearsay was admitted over objection; however, this court concluded that "the error was not so prejudicially erroneous as to require a new trial." There was strong evidence other than the hearsay statement upon which the jury could rely to find the defendant guilty. *Id.*

In this case, the other evidence upon which a jury could rely to establish the defendant's guilt was overwhelming. Accordingly, although Officer Duffy's testimony was inadmissible, the trial court's failure to exclude it did not constitute reversible error because the error was harmless beyond a reasonable doubt.

The defendant's final assignment of error, regarding his sentence, is also without merit. The defendant was convicted of robbery, a serious offense and a Class II felony which is punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-324 (Reissue 1989) and § 28-105 (Reissue 1985). A sentence imposed within the limits prescribed by statute will not be disturbed on appeal absent an abuse of discretion. *State v. Dillon*, 222 Neb. 131, 382 N.W.2d 353 (1986).

The presentence report shows that the defendant has a history of chronic substance abuse. According to the presentence report, he struck the victim twice during the robbery. The defendant has demonstrated a high need for control and has difficulty dealing with those in authority.

The defendant's sentence is within the limits prescribed by

statute, and under the facts and circumstances of the case, the trial court did not abuse its discretion in imposing it.

The judgment is affirmed.

AFFIRMED.