STATE OF NEBRASKA, APPELLEE, V. LAVELL FLY, APPELLANT.
461 N.W.2d 421

Filed October 19, 1990.    No. 89-1293.

Dean S. Forney, Box Butte County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Pursuant to verdict, defendant-appellant, Lavell Fly, was adjudged guilty of third degree assault on an officer, in violation of Neb. Rev. Stat. § 28-931 (Reissue 1989), and thereafter sentenced to imprisonment for a period of not less than 20 months nor more than 5 years. Fly claims the trial court erred in (1) finding there was sufficient evidence to support the verdict and (2) imposing an excessive sentence. We affirm.

At approximately 4 p.m. on April 1, 1989, Officer Joseph Digmann of the Alliance Police Department was dispatched to a business establishment in Alliance, Box Butte County, Nebraska, to interview Fly with reference to a disturbance. The two men met at the front door of the establishment.

Digmann testified that Fly was upset and said his brother had been assaulted and hurt. Fly then got into the police vehicle to

show the officer where his brother was. As they were driving away from the establishment, they met an "older brown Plymouth" automobile. Fly said his brother was in that automobile and told the officer to stop the Plymouth. Fly next jumped out of the police vehicle, which had slowed down, and ran after the Plymouth, the driver of which pulled into the parking lot across the street from the establishment at which Fly and Digmann had met. Digmann followed Fly in his vehicle and also drove into the parking lot.

Digmann testified that he was then met at the door of his vehicle by Fly and four other men. Digmann exited his vehicle and asked Fly who had been hurt and what was going on.

By Digmann's account, the men then formed a half circle around him and forced him to back up against his vehicle. Fly stood directly in front of Digmann, and the group used loud, profane, and abusive language toward the officer. Digmann stated that he tried to settle down the group but that Fly kept pointing his finger within about 4 inches of Digmann's face. Digmann told Fly to settle down, back up, and take his hand out of the officer's face, but Fly instead moved his hand closer and continued to yell profanities at him. Digmann then took hold of Fly's hand, lowered it, and told Fly he was under arrest.

According to Digmann, Fly thereupon tried to struggle and get away, but Digmann kept hold of him. Digmann testified that Fly then struck him on the right cheek, below the eye, with his left fist, knocking off Digmann's glasses. Digmann kept hold of Fly's right hand throughout the struggle, and Fly hit the officer twice more, on the forehead and on the jaw. The two men then wrestled and fell to the ground, whereupon Digmann's gun fell out of its holster onto the ground. Digmann let go of Fly to retrieve the gun while both men were on the ground, and Fly got up and left the scene.

Digmann received a black eye and had pain as a result of the incident but did not receive medical attention or miss any work.

The State also produced the testimony of four other witnesses. While the individual accounts of these witnesses varied somewhat, all witnessed an altercation between a man and a police officer in the subject parking lot on April 1, 1989. None of these witnesses were close enough to identify Fly as the

person involved in the altercation with the police officer. All admitted that their respective views of the incident were blocked at times or that they were not watching the entire time. All heard either loud voices or profane language from the scene of the altercation, and some heard both.

Fly's account of the incident was markedly different from Digmann's. Fly admitted calling the police department, claiming that he was being chased. He also admitted getting into the police vehicle with Digmann and jumping out of it to chase an oncoming automobile that he recognized, which automobile then pulled into the subject lot. Fly also admitted that several people got out of this automobile and approached the police vehicle.

However, by Fly's version, Digmann started talking hysterically to him and the others. According to Fly, Digmann touched Fly on his chest violently with his index finger, forcing Fly to back up. Digmann then grabbed Fly's jacket, pulled it over his head, and started punching him. Fly asserted that he struggled and tried to get away. He panicked during his struggling, Digmann's gun fell from its holster, and both men fell to the ground due to Digmann's pulling on him. Fly speculated that Digmann must have hit his own head during the altercation. Fly confessed that he left the scene when Digmann let go of him in order to retrieve the gun.

Fly specifically denied striking Digmann with his left hand, citing an injury he suffered to that hand earlier in the day as proof that he could not have done so. He also claimed to have told Digmann of this injury before getting in the police vehicle. Digmann specifically denied this claim, and Fly admitted he did not have his hand medically treated.

Fly's stepbrother or half brother, Leo Boerschig, testified that Digmann initiated the scuffle by poking Fly in the chest. According to Boerschig, Digmann then grabbed Fly's jacket and, in the ensuing scuffle, the two men's heads collided. Boerschig did not see Fly hit Digmann.

Section 28-931 reads in pertinent part: "A person commits the offense of assault on an officer in the third degree if he or she intentionally, knowingly, or recklessly causes bodily injury to a peace officer . . . while such officer . . . is engaged in the

performance of his or her official duties."

When deciding whether a criminal conviction is supported by sufficient evidence,

> it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. [Citation omitted.] "[A]fter a jury has considered all of the evidence and returned a verdict of guilty, that verdict may not, as a matter of law, be set aside on appeal for insufficiency of evidence if the evidence sustained some rational theory of guilt." *State v. Wilkening*, 222 Neb. 107, 110, 382 N.W.2d 340, 342 (1986).

*State v. Broussard*, 235 Neb. 809, 813, 457 N.W.2d 457, 460-61 (1990). Accord, *State v. Bradley, ante* p. 371, 461 N.W.2d 524 (1990); *State v. Sullivan, ante* p. 344, 461 N.W.2d 84 (1990).

The evidence was such that the jury could reasonably conclude that Fly intentionally struck Digmann in the face three times and that these blows left Digmann with a black eye, other marks, and pain. The evidence also shows that Digmann was in uniform, performing his duties as a police officer at the time of the altercation. For purposes of § 28-931, "[a] police officer is a peace officer." *State v. Washington*, 232 Neb. 838, 839, 442 N.W.2d 395, 396 (1989). The verdict is therefore supported by the evidence. See, *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990); *State v. Washington, supra*.

Fly's entire excessive sentence argument is as follows: "Reason and logic demand that, after a fair reading of the Bill of Exceptions and the presentence report, this court hold that the sentence was excessive." Brief for appellant at 3. The only answer such an argument warrants is that no abuse of discretion having been shown and the sentence being within the statutory limits, it is not excessive. *State v. Glover, ante* p. 402, 461 N.W.2d 410 (1990); *State v. Broussard, supra;* § 28-931(2); Neb. Rev. Stat. § 28-105 (Reissue 1985).

There being no merit to either of Fly's assignments of error, the judgment of the district court is affirmed.

AFFIRMED.