STATE OF NEBRASKA, APPELLEE, V.
DAVID C. HEMBERTT, APPELLANT.
696 N.W.2d 473

Filed May 20, 2005.    No. S-04-1124.

Thomas C. Riley, Douglas County Public Defender, Joseph Kehm, and, on brief, Horacio J. Wheelock for appellant.

Jon Bruning, Attorney General, and Kevin J. Slimp for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

The defendant, David C. Hembertt, was convicted in the county court of assault and battery, based in part on the testimony of an Omaha police officer regarding statements made by the alleged victim when police arrived at the scene after the assault. The alleged victim did not testify at trial. The issues presented in this appeal are whether the officer's testimony as to the alleged victim's statements was properly admitted into evidence under the excited utterance exception to the hearsay rule and, if so, whether the statements were "testimonial" within the meaning of the Confrontation Clause standards explained in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

## BACKGROUND

At approximately 10 a.m. on April 15, 2004, John Sherman, a police officer for the city of Omaha, was on routine patrol and received an emergency call from 911 dispatching him to an Omaha residence to check on the well-being of a resident. Sherman and another officer arrived at the residence about 3 to 5 minutes after receiving the call, but were unable to get inside. A man then pulled up in front of the residence and told police he had made the 911 emergency call.

A few seconds later, a woman "came running" out of the residence. Over continuing hearsay and Confrontation Clause objections, Sherman testified at trial that the woman was "crying hysterical, trembling. She began to identify herself as the — as the residence — resident there and that she had — that she had been assaulted." The woman went directly to the man who had made the emergency call, "crying and pointing to the house saying . . . he's inside. He's upstairs." Sherman testified that he observed bruises on the woman's face and body.

Sherman testified that before police asked any questions, the woman "began to explain the story that he had been attacking her, head butting her and that he had threatened her with a knife." The woman explained that "they had gotten into an argument. That he was somewhat accusing her of sleeping with another man. And as a result he started to beat her, head butted her I believe she said, threw her across a counter and up against the wall and threatened her with a knife." The woman said the incident had happened "[m]oments prior to [the officers'] arrival."

Sherman stated that they did not allow the woman to go into any more detail about the assault at that time, because they were concerned about locating the alleged assailant. Sherman and the other officer entered the residence, located the alleged assailant, and arrested him. Sherman identified Hembertt at trial as the man they arrested. A steel switchblade knife was found underneath the bed upon which Hembertt was lying.

After Hembertt was arrested, Sherman went back to interview the alleged victim. At trial, however, the county court sustained Hembertt's hearsay and Confrontation Clause objections to Sherman's testimony regarding this later questioning of the alleged victim.

Hembertt testified at trial in his own defense. Hembertt admitted knowing the alleged victim, who Hembertt testified was his girl friend. Hembertt testified that she had gotten a black eye in a fight with an emergency room nurse about a week before the alleged assault, but that he had not seen her other bruises and did not know what caused them. Hembertt denied assaulting the alleged victim.

Following a bench trial in the county court, Hembertt was convicted of assault and battery in violation of Omaha Mun. Code, ch. 20, art. IV, § 20-61 (1980), and sentenced to 90 days in jail. An appeal bond was set, and Hembertt appealed. The district court affirmed the judgment of the county court.

## ASSIGNMENTS OF ERROR

Hembertt assigns that (1) the district court erred in not finding that the county court erred when it overruled his hearsay objections to Sherman's testimony and (2) even if the alleged victim's statements were properly admitted under the excited utterance hearsay exception, those statements should have been barred

pursuant to the Confrontation Clause of the Sixth Amendment to the U.S. Constitution.

## STANDARD OF REVIEW

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. King, ante* p. 326, 693 N.W.2d 250 (2005). The admission of hearsay is controlled by the Nebraska Evidence Rules. State v. Pruett, 263 Neb. 99, 638 N.W.2d 809 (2002). See *State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993).

■ An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause, and reviews the underlying factual determinations for clear error. See, *U.S. v. Bordeaux*, 400 F.3d 548 (8th Cir. 2005); *State v. Sheets*, 260 Neb. 325, 618 N.W.2d 117 (2000), *overruled on other grounds, Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

## ANALYSIS

### EXCITED UTTERANCE

We first consider Hembertt's argument that the trial court erred in overruling his hearsay objection to Sherman's testimony. Under Neb. Rev. Stat. § 27-801(3) (Reissue 1995), hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *State v. Duncan*, 265 Neb. 406, 657 N.W.2d 620 (2003). Hearsay is not admissible except as provided by the rules of evidence or by other rules adopted by the statutes of the State of Nebraska or by the discovery rules of this court. Neb. Rev. Stat. § 27-802 (Cum. Supp. 2004); *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995). Sherman's testimony in this case, with respect to the statements made at the scene by the victim, clearly contains hearsay, but it was admitted pursuant to the excited utterance exception to the hearsay rule. Neb. Rev. Stat. § 27-803(1) (Cum. Supp. 2004) provides that even when the declarant is available as a witness, the hearsay rule does not exclude "[a] statement relating to a startling

event or condition made while the declarant was under the stress of excitement caused by the event or condition."

For a statement to qualify as an excited utterance, the following criteria must be met: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant while under the stress of the event. *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000). The key requirement is spontaneity, which requires a showing the statements were made without time for conscious reflection. *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993), *abrogated on other grounds, State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). Hembertt does not contest the trial court's finding that there was, in this case, a startling event to which the statements at issue related. Hembertt argues that the statements were not spontaneous.

The underlying theory of the excited utterance exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterance free of conscious fabrication. *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990). The true test in spontaneous exclamations is not when the exclamation was made, but whether under the circumstances of the particular exclamation, the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue. *State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993), quoting 6 John H. Wigmore, Evidence in Trials at Common Law § 1745 (James H. Chadbourn rev. 1976). Accord *Tlamka, supra*. Statements need not be made contemporaneously with the exciting cause but may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. *Jacob, supra*, quoting 6 Wigmore, *supra*, § 1750.

The record in this case clearly establishes the element of spontaneity necessary for the declarant's statements to be an excited utterance. According to Sherman's testimony, the woman said that the assault had occurred moments prior to the officers' arrival and that her statement was volunteered. Assuming Sherman's testimony to be correct, as we do on appeal, there had not been time for the exciting influence to have been dissipated. See *Jacob, supra*. Given Sherman's testimony, the trial court did not err in

concluding that foundation for the excited utterance exception to the hearsay rule had been established.

Hembertt relies on *State v. Sullivan*, 236 Neb. 344, 461 N.W.2d 84 (1990), in which we found that a statement that a robber had driven a particular model of vehicle was not an excited utterance because it was made in response to a specific suggestion from a police officer. Hembertt claims that the statements at issue in the instant case were also made in response to police questioning. However, Hembertt's claim is not supported by the record. Hembertt's appellate brief quotes the following colloquy from the State's direct examination of Sherman:

> Q. . . . When [the alleged victim] initially came out to speak with [the 911 caller] and yourselves, did you inquire about — or inquire further into the nature of the call?
>
> A. Yes, we did.

According to Hembertt, this colloquy shows that the statements were made under police interrogation. Hembertt claims that "it is undeniable that [the declarant's] statements were made in direct response to Officer Sherman's inquiry into the 'nature of the call.' Indeed, [she] made her statements only after being invited to do so by Officer Sherman." Brief for appellant at 10.

However, Hembertt fails to acknowledge the testimony immediately following that colloquy:

> Q. Okay. And was she volunteering information or were you asking her questions? How did — how did it — how did it start?
>
> A. She was volunteering information.

Sherman later specifically agreed that the declarant's testimony at this time "was not in response to a question that [he] or another officer asked." In fact, the declarant's later statements, made in response to police interrogation, were excluded from evidence by the trial court. Hembertt's claim that the statements at issue here were made in response to police questioning is contradicted by the record. When asked, Sherman specifically testified that the declarant's statements were made before any questions were asked.

Hembertt also argues that later testimony establishes that the declarant's statements were made in response to questioning. Hembertt refers to testimony in which Sherman stated that "one of our first questions was are there any weapons in the house. And

she responded that yes there was. He had threatened — threatened me with a knife." It is not entirely clear from the record, however, whether this exchange occurred before or after the initial statements made when the declarant emerged from the home.

Furthermore, even if a question regarding weapons in the house were asked before the declarant's statements, such a question would not implicate the reasoning we relied upon in *State v. Sullivan*, 236 Neb. 344, 461 N.W.2d 84 (1990). In *Sullivan*, the investigating officer made a specific suggestion of a type of vehicle, prompting the declarant's response. Because the declarant in that case identified the vehicle only after a particular model was suggested by the officer, we concluded that the statement had been made after conscious reflection. See *id*. However, under the circumstances of this case, asking the declarant whether there were weapons in the house would not undermine the conclusion that the declarant was still speaking under the stress of nervous excitement and shock produced by the act in issue. See *State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993).

The trial court correctly determined that appropriate foundation was present for Sherman's testimony to be allowed under the excited utterance exception to the hearsay rule. His first assignment of error is without merit.

### Confrontation Clause

██ The Confrontation Clause, U.S. Const. amend. VI, provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Neb. Const. art. I, § 11, provides, in relevant part: "In all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face . . . ." We have held that the analysis under article I, § 11, is the same as that under the Sixth Amendment to the U.S. Constitution. *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004).

██ Where "testimonial" statements are at issue, the Confrontation Clause demands that such hearsay statements be admitted at trial only if the declarant is unavailable and there had been a prior opportunity for cross-examination. *Vaught, supra*, citing *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Thus, our initial step is to determine whether

the statements at issue in the present case were testimonial in nature. See *id.* The U.S. Supreme Court in *Crawford* declined to provide a comprehensive definition of "testimonial," but stated that the term applied at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. *Vaught, supra.* And, although the U.S. Supreme Court has not fully defined "testimonial," it did provide three formulations of the core class of testimonial statements.

> "In the first, testimonial statements consist of 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.' . . . The second formulation described testimonial statements as consisting of 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' . . . Finally, the third explained that testimonial statements are those 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' . . . While the Court declined to settle on a single formulation, it noted that, '[w]hatever else the term [testimonial] covers, it applies . . . to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. These are the modern abuses at which the Confrontation Clause was directed.' "

*Vaught,* 268 Neb. at 325, 682 N.W.2d at 291, quoting *Horton v. Allen,* 370 F.3d 75 (1st Cir. 2004), *cert. denied* 543 U.S. 1093, 125 S. Ct. 971, 160 L. Ed. 2d 905 (2005).

The U.S. Supreme Court in *Crawford* further expounded upon the scope of "testimonial" statements by explaining the history underlying the common-law right of confrontation, specifically with reference to police interrogation. In *Crawford,* the declarant made a statement while in police custody regarding an incident in which the defendant, her husband, had allegedly stabbed the victim. The defendant admitted the incident but claimed self-defense; his wife, who was present, did not support the self-defense claim. When the wife was unavailable to testify

at trial, her statement was admitted as a statement against penal interest. Thus, the Court considered whether statements made during formal police interrogation were "testimonial" for purposes of Confrontation Clause analysis.

Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard. Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of oath was not dispositive. Cobham's examination was unsworn, see 1 Jardine, Criminal Trials, at 430, yet Raleigh's trial has long been thought a paradigmatic confrontation violation, see, *e.g., Campbell*, 30 S. C. L., at 130. Under the Marian statutes, witnesses were typically put on oath, but suspects were not. See 2 Hale, Pleas of the Crown, at 52. Yet [several authorities] went out of their way to caution that such unsworn confessions were not admissible against anyone but the confessor. . . .

That interrogators are police officers rather than magistrates does not change the picture either. Justices of the peace conducting examinations under the Marian statutes were not magistrates as we understand that office today, but had an essentially investigative and prosecutorial function. See 1 Stephen, Criminal Law of England, at 221; Langbein, Prosecuting Crime in the Renaissance, at 34-45. England did not have a professional police force until the 19th century, see 1 Stephen, *supra*, at 194-200, so it is not surprising that other government officers performed the investigative functions now associated primarily with the police. The involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace.

In sum, even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class. ·

(Emphasis in original.) *Crawford v. Washington*, 541 U.S. 36, 52-53, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Furthermore, the Court clarified that the term "interrogation" was used in its

colloquial, rather than any technical legal, sense. *Id.* "Just as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation,' and we need not select among them in this case." 541 U.S. at 53 n.4. We note, for clarity's sake, that whether particular evidence is "testimonial," for Confrontation Clause purposes, may be quite different from whether it is "testimonial" as that word is used in other contexts. Compare, e.g., *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000).

Given the Court's reasoning in *Crawford*, and the underlying facts of the case, other courts to have subsequently addressed the subject have concluded that "police interrogation," within the meaning of *Crawford*, requires some kind of structured police questioning, intended to elicit information for use in a contemplated prosecution. See *State v. Alvarez*, 210 Ariz. 24, 107 P.3d 350 (Ariz. App. 2005). See, e.g., *Mungo v. Duncan*, 393 F.3d 327 (2d Cir. 2004); *Jenkins v. State*, 278 Ga. 598, 604 S.E.2d 789 (2004); *State v. Barnes*, 854 A.2d 208 (Me. 2004); *People v. Coleman*, 16 A.D.3d 254, 791 N.Y.S.2d 112 (2005); *State v. Staten*, 364 S.C. 7, 610 S.E.2d 823 (S.C. App. 2005); *People v. Kilday*, 123 Cal. App. 4th 406, 20 Cal. Rtpr. 3d 161 (2004), *review granted* 105 P.3d 114, 23 Cal. Rptr. 3d 693 (2005); *Hammon v. State*, 809 N.E.2d 945 (Ind. App. 2004).

The inquiry is whether, under the circumstances, the declarant intended to bear testimony against the accused. The determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial. *U.S. v. Saget*, 377 F.3d 223 (2d Cir. 2004), *cert. denied* 543 U.S. 1079, 125 S. Ct. 938, 160 L. Ed. 2d 821 (2005). See, also, *U.S. v. Cromer*, 389 F.3d 662 (6th Cir. 2004); *Staten, supra*; *Lopez v. State*, 888 So. 2d 693 (Fla. App. 2004); *People v. Vigil*, 104 P.3d 258 (Colo. App. 2004), *cert. granted* No. 04SC532, 2004 WL 2926003 (Colo. Dec. 20, 2004); *State v. Forrest*, 164 N.C. App. 272, 596 S.E.2d 22 (2004); *People v. Cervantes*, 118 Cal. App. 4th 162, 12 Cal. Rptr. 3d 774 (2004). Thus, some excited utterances are testimonial and others are not, depending upon the circumstances in which the particular statement was made. *Stancil v. U.S.*, 866 A.2d 799 (D.C. 2005). See, also, *Staten, supra*; *Lopez, supra*; *Kilday, supra*; *State v. Orndorff*, 122 Wash. App. 781, 95 P.3d 406 (2004); *Forrest*,

*supra*. Under *Crawford*, statements obtained during police interrogations are testimonial fundamentally because police officers who obtain a statement during an interrogation are performing investigative and evidence-producing functions formerly handled by justices of the peace. *Kilday, supra*. Extension of this rationale indicates that a statement made at or near the scene of a crime may be an excited utterance, yet may also be testimonial under *Crawford* if obtained through questioning by a police officer acting in an investigative capacity to produce evidence in anticipation of a potential criminal prosecution. *Kilday, supra*.

▆ The underlying assumption in these cases is that a declarant responding to police questioning, structured and conducted for the purpose of producing evidence in anticipation of a potential criminal prosecution, should reasonably anticipate his or her testimony being used against the accused. See *Saget, supra*. Cf. *Alvarez, supra*. As the Court noted in *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), "testimony" is " 'made for the purpose of establishing or proving some fact.' . . . An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." In other words, whether a statement is testimonial depends on the purpose or expectation of the declarant in making the statement, and the circumstances surrounding the making of the statement illuminate the purpose or expectation of the declarant.

Considered in that framework, the statements at issue in this case were not "testimonial" within the meaning of *Crawford*. The statements at issue on appeal, if they occurred in response to any questioning at all, certainly did not occur in the context of structured police questioning. When police arrived at the scene, the declarant was frightened and the area and suspect were unsecured. Compare, e.g., *Leavitt v. Arave*, 383 F.3d 809 (9th Cir. 2004); *Stancil, supra*; *People v. Kilday*, 123 Cal. App. 4th 406, 20 Cal. Rptr. 3d 161 (2004), *review granted* 105 P.3d 114, 23 Cal. Rptr. 3d 693 (2005). Police who respond to emergency calls for help and ask preliminary questions to ascertain whether the victim, other civilians, or the police themselves are in danger are not obtaining information for the purpose of making a case against a suspect. *Stancil, supra*. See, also, *Mungo v. Duncan*, 393 F.3d 327

(2d Cir. 2004); *People v. Coleman*, 16 A.D.3d 254, 791 N.Y.S.2d 112 (2005); *Key v. State*, No. 12-04-00030-CR, 2005 WL 467167 (Tex. App. Feb. 28, 2005); *Kilday, supra*; *Hammon v. State*, 809 N.E.2d 945 (Ind. App. 2004). The statements at issue in this case were not made in anticipation of eventual prosecution, but were made to assist in securing the scene and apprehending the suspect. We agree with the trial court's determination that the statements were not testimonial.

This conclusion, while based on the facts of this case, is consistent with the reasoning and conclusions of several courts to have considered similar circumstances. Courts have almost uniformly held that statements made to police officers responding to an emergency call for help were, at the initial stage of the encounter, not testimonial, because they were intended to help officers assess the situation and secure the scene. See, e.g., *Mungo, supra*; *Leavitt, supra*; *Stancil v. U.S.*, 866 A.2d 799 (D.C. 2005); *State v. Barnes*, 854 A.2d 208 (Me. 2004); *Key, supra*; *People v. King*, No. 02CA0201, 2005 WL 170727 (Colo. App. Jan. 27, 2005); *People v. Corella*, 122 Cal. App. 4th 461, 18 Cal. Rptr. 3d 770 (2004); *Rogers v. State*, 814 N.E.2d 695 (Ind. App. 2004); *State v. Forrest*, 164 N.C. App. 272, 596 S.E.2d 22 (2004). But see *Lopez v. State*, 888 So. 2d 693 (Fla. App. 2004).

The facts of *Kilday, supra*, present an excellent illustration of how the principles of *Crawford* operate under circumstances similar to those presented here. In *Kilday*, police were called to a hotel by the hotel manager's daughter, after the manager asked a resident (the declarant) about an injury the manager observed on her body, and the declarant admitted she had been intentionally burned by her live-in boyfriend (the defendant). Police officers arrived and encountered the declarant in the lobby, upset, frightened, and reluctant to speak to the officers. She told the police that she had been beaten by the defendant on a number of occasions, including that day. Because of the declarant's reticence to speak, a female detective was summoned, who met the declarant in the lobby and asked the declarant more questions about her visible injuries. Finally, after the defendant was arrested outside the hotel, the detective conducted a tape-recorded interview with the declarant in the declarant's hotel room. *Id.*

Applying *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the California Court of Appeals concluded that the third and second statements were testimonial, but the first was not. Considering the statements in reverse order, the court explained that the third statement, taken in an interview in the declarant's hotel room, was substantially similar to the custodial statement at issue in *Crawford*. The second statement was testimonial, according to the court, because the detective was acting in an investigatorial capacity in anticipation of an eventual criminal prosecution and because at that time, the area had been secured and the police had assessed and resolved any exigencies. The court also noted that before questioning the declarant, the detective had learned what was going on from the police officers who had initially responded; this allowed the detective to conduct a more purposeful and focused questioning. The court stated that where a different officer had been summoned to the scene to question the victim, focus had clearly shifted from securing a scene to the production of evidence. See *People v. Kilday*, 123 Cal. App. 4th 406, 20 Cal. Rptr. 3d 161 (2004), *review granted* 105 P.3d 114, 23 Cal. Rptr. 3d 693 (2005).

The first statement, however, was found to not be testimonial. When the statement was made, the officers were not aware of the nature of the crime at issue or the identity of the alleged assailant, whether the defendant was on or near the premises, whether he was armed or dangerous, or whether the declarant needed medical attention. The court declined to adopt a blanket rule that all statements obtained by police officers responding to emergency calls were nontestimonial; rather, the court stated that the determination whether the statement is testimonial was a case-specific, fact-intensive inquiry, centering around the principles of *Crawford* we have discussed above. Since the officers in *Kilday* were, when the first statement was made, still principally in the process of securing and assessing the scene, the California court concluded that the statement elicited was not testimonial. See *id.*

Similarly, the statements at issue in this case were not testimonial, because they were made while officers had barely begun the process of assessing and securing the scene. The trial court drew an entirely appropriate distinction between those statements

and Sherman's testimony regarding later statements made by the declarant in response to interrogation, which were excluded from evidence. The trial court did not err in concluding that the statements at issue in this appeal were not testimonial statements within the meaning of *Crawford.*

Because the U.S. Supreme Court specifically referred to testimonial statements in its holding in *Crawford,* the effect of the Confrontation Clause on the admission of nontestimonial hearsay statements post-*Crawford* is unclear. See *State v. Vaught,* 268 Neb. 316, 682 N.W.2d 284 (2004), citing *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The Court made no explicit statement regarding nontestimonial statements but did suggest that either such statements required no Confrontation Clause scrutiny or that prior standards developed under *Ohio v. Roberts,* 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), *overruled, Crawford, supra,* or its progeny still applied to nontestimonial hearsay evidence. See *Vaught, supra.*

However, we need not answer that question in this case because, even under the standards developed under *Roberts, supra,* the nontestimonial hearsay at issue in this case would be admissible. In *Roberts,* the U.S. Supreme Court determined that when a witness is unavailable for cross-examination, his or her statements are admissible only if they bear adequate indicia of reliability. Reliability can be inferred, without more, in a case in which the evidence falls within a firmly rooted hearsay exception. *Vaught, supra.* The hearsay exception for excited utterances is firmly rooted. See, *White v. Illinois,* 502 U.S. 346, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992); *State v. Plant,* 236 Neb. 317, 461 N.W.2d 253 (1990). Consequently, this nontestimonial hearsay is admissible regardless of whether it is subject to Confrontation Clause scrutiny.

The trial court correctly overruled Hembertt's Confrontation Clause objection to the nontestimonial hearsay statements at issue in this appeal. We reject Hembertt's second and final assignment of error.

## CONCLUSION

The county court properly determined that Sherman's testimony regarding statements made by the alleged victim were properly admissible under the excited utterance exception to the

hearsay rule, and were not barred by the Confrontation Clause. The district court correctly affirmed the judgment of the county court. The district court's judgment is affirmed.

AFFIRMED.