IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. OSTRUM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RUSSELL E. OSTRUM, APPELLANT.

Filed June 21, 2016.    No. A-15-985.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge, on appeal thereto from the County Court for Lancaster County: MATTHEW L. ACTON, Judge. Judgment of District Court affirmed.

Brett McArthur for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Russell E. Ostrum appeals from an order of the district court for Lancaster County affirming his conviction and sentence in the county court for assault and battery in violation of Lincoln Municipal Code 9.12.010. On appeal, Ostrum asserts the county court erred in the admission of hearsay statements under the excited utterance exception, the denial of his motion for directed verdict, and the imposition of an excessive sentence. Finding no merit to Ostrum's assigned errors, we affirm.

## BACKGROUND

On September 25, 2014, Ostrum was charged in county court with assault and battery in violation of Lincoln Municipal Code Section 9.12.010, a misdemeanor.

- 1 -

The actions giving rise to the complaint occurred during the evening of September 24, 2014. The victim of the purported assault was Candice Craig. Specifically, the long-form criminal complaint alleged the following:

(Ostrum) on or about September 24, 2014, in the City of Lincoln, County of Lancaster and State of Nebraska, then and there being, did (a) intentionally or knowingly (1) threaten (Candice) in a menacing manner; or (2) attempt to strike (Candice); or (3) place (Candice) in fear or apprehension of imminent bodily harm; or did (b) intentionally, knowingly, or recklessly (1) cause bodily injury to (Candice); or (2) strike (Candice), contrary to the form of the Lincoln Municipal Code, in such cases made and provided, and against the peace and dignity of the State of Nebraska.

On February 24, 2015, trial was held before the county court. The State presented the witness testimony of Candice and Neal Craig, Candice's father. Ostrum testified on his own behalf.

Candice testified that Ostrum is her ex-boyfriend, with their 2-year relationship having ended around October 2014. Ostrum is the father of the younger of Candice's two sons. Candice's older son was age 7 and the younger son was around 9 months old at the time of the incident. On the date in question, Ostrum and Candice were living together in a house with the two boys. They lived around the corner from Neal's home. Candice testified to being "sometimes" scared of Ostrum.

During the evening of September 24, 2014, Candice and Ostrum engaged in an argument at their residence, but Candice did not recall how the argument started. Earlier that evening, Candice was at the home of a friend along with a neighbor woman and the two boys. She estimated that they were at that location from 4:00 pm to 8:00 pm. According to Candice, the group had dinner and consumed "maybe a couple drinks." She denied smoking anything or becoming intoxicated. Candice then drove the neighbor woman and her two boys back to the residence she shared with Ostrum.

Upon arriving at their home, Candice claims that Ostrum was angry and yelling at her, but she did not understand why he was upset. Ostrum told Candice to leave the residence. He told Candice to take the older son with her but not the younger son, although Candice wanted to take them both with her. The neighbor woman took the older son to Neal's home shortly after the argument began. Candice remembered Ostrum opening the front door and telling her to leave.

Candice claimed to have suffered scrapes on her arms at some point during the argument. Candice stated that she fell into the yard of the residence, which she described as having "a sidewalk right there and then the yard is mostly dirt and sticks." Candice testified that the fall knocked the wind out of her. She originally believed the fall injured her rib area, but she later thought "the wind was just knocked out of me," and "eventually, it went away." Candice stated that the scrapes on her arms were not present prior to her fall, and she assumed that this is when these injuries occurred. She did not remember if Ostrum caused these injuries, only that Ostrum was telling her to leave, and that she could not breathe when she was in the yard. After this fall into the yard, Ostrum asked Candice to come back inside. With the assistance of Ostrum, she "finally got up" and went back into the residence.

The neighbor woman returned to the residence and took Candice to Neal's house. Candice indicated she was crying during this period of time, upset as a result of her suspected rib injury, the argument with Ostrum, the way he spoke to her, and being "thrown out" of the home without her youngest son. Candice's belief that something was wrong with her ribs prompted Neal to call the police and an ambulance without her knowledge. Once the ambulance arrived, Candice said she was upset that Neal called the police, and she tried to talk them out of going over to the couple's residence. She testified that by the time the ambulance arrived, she "could breathe again," so she was no longer concerned about her ribs. The police spoke with Neal and Candice, then made contact with Ostrum. A police report was later filed.

Neal testified that Candice arrived at his home between approximately 7:00 and 7:15 pm. Neal indicated that Candice was crying, in pain, and appeared very upset upon arrival at his house. Neal claimed that "immediately" upon Candice's entrance into his home, he asked her what had happened. Ostrum's hearsay objection was originally sustained due to lack of foundation. Further questioning by the State established that the distance between Candice and Neal's residences was around a 3-minute walk, Candice did not mention taking any detours between the residences, and Neal observed that Candice was crying and upset upon arrival. The court determined that sufficient foundation had been laid for the excited utterance exception to apply, and allowed Neal to testify regarding Candice's description of the alleged assault.

Neal described Candice's comments to him following her arrival. Candice told Neal that she and Ostrum were arguing, and Ostrum had "come to the point where he was throwing her out of the house." She further explained to Neal that Ostrum "snagged her up in one of his arms," opened the front door with his other hand, and released her from his hold on the front step. Candice said she bounced off the wrought iron banister, which was a couple of steps high, then bounced down the concrete stairway, and landed on the sidewalk. Neal also testified that Candice said she "wasn't prepared, so she fell awkwardly." Candice told Neal that at this point the wind was knocked out of her, she experienced pain to her rib area, and she "somewhat lost consciousness." According to Neal, Candice is much shorter than Ostrum, at 5 feet 2 inches and weighing around 100 pounds.

Additionally, Neal testified to his observation of Candice's injuries. He described Candice as being in pain when she arrived at his house. Candice did not show Neal her injuries until after the EMTs arrived, which was less than 10 minutes after he called the police. Then Neal observed "an area on her side that was reddish and inflamed," and that "she was complaining of her ribs hurting." Further, Neal saw "some marks on her arm," but Candice was "unsure where they had come from." Candice also told Neal she was scared by Ostrum's actions. Lastly, Neal testified that Candice still resides primarily with Ostrum, but she has come to live with Neal five times since the case began.

Following the State's rest, Ostrum's attorney made a motion for directed verdict which was overruled. Ostrum's attorney also moved the court to reconsider its earlier admission of Neal's hearsay statements, which motion was also denied. Ostrum then testified in his defense.

Ostrum testified that he arrived at home from work around 5:30 pm on September 24, 2014. He discovered that the dog had torn up the trash and strung it throughout the kitchen and living room. Candice arrived at the residence around 7:00 pm with the neighbor woman and the two boys.

Ostrum stated that Candice was "extremely intoxicated" and had bloodshot eyes. He thought that she was "hopped up" based on her behavior. Ostrum expressed to Candice his concern that she had driven home with the children based on these observations of her condition.

Ostrum testified that the couple engaged in a heated argument, with both parties yelling at each other, and the neighbor took the oldest boy to Neal's house. Candice slapped Ostrum's face during the argument. Ostrum instructed Candice to leave. He claims to have done this because Candice typically goes to Neal's home when she is upset, then calms down after an hour or so and returns to the home, after which they are able to resolve their disputes.

Ostrum told Candice to leave and he opened the door. He told her to get out because he "couldn't handle" his emotions anymore, was "very upset," and knew he needed to "just get away from the situation." Ostrum stated that the younger boy was already in bed, so someone had to stay at the residence, and Ostrum "had no place to go." Therefore, Ostrum claims that "it was just most logical that she wanted to leave anyway and so I said, 'Here, get out.'" Ostrum continually denied having used any physical force in removing Candice from the residence.

After observing Candice exit through the front door, Ostrum turned his back and reentered the home. He then turned around to see if Candice was leaving, and saw her lying on the ground outside on her hands and knees. Ostrum then went out into the yard, assisted Candice to her feet, and escorted her inside. He did not see her fall, but testified that "I could tell that she, obviously, had tripped on the step in the frustration of leaving, and that's how I feel she sustained the injuries that she got." Ostrum did not observe any injuries on Candice after her fall, stating that she was just very upset but was not complaining of any pain.

Upon reentry into the house, Ostrum claims they sat on the couch and the situation started to calm down, then the neighbor arrived and Candice left with her. Ostrum estimates that Candice and he were in the home subsequent to her fall for 5 minutes before the neighbor appeared.

Ostrum's attorney rested and renewed the motion for directed verdict, which was again overruled.

The county court announced from the bench that it found the State had met its burden of proof beyond a reasonable doubt and that Ostrum was guilty of assault and battery. The court ordered a presentence investigation and set the matter for sentencing.

On May 1, 2015, a sentencing hearing was held. The court placed Ostrum on probation for a period of 18 months, under various terms and conditions.

Ostrum filed his notice of appeal to the district court and assigned as error the overruling of the hearsay objection and motion for directed verdict. Additionally, he asserted that the trial court abused its discretion in imposing the sentence.

On October 1, 2015, the appeal was heard before the district court which took the matter under advisement.

On October 5, 2015, the district court issued its written order affirming the decision of the county court. First, the district court found that the county court correctly admitted Neal's testimony regarding Candice's statements, made to him following her arrival at his residence, as an excited utterance. Second, the court found that the county court properly overruled Ostrum's motion for directed verdict. Lastly, the court held that the sentence imposed was not abusive or inappropriate under the circumstances.

Ostrum subsequently perfected this appeal.

ASSIGNMENTS OF ERROR

Ostrum assigns, restated, that the district court erred in affirming the county court's (1) overruling of Ostrum's hearsay objections to the statements of Neal, (2) overruling of Ostrum's motion for directed verdict, and (3) imposition of an excessive sentence.

STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. But an appellate court independently reviews questions of law in appeals from the county court. *Id*. When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court. *Id*.

Apart from rulings under the residual hearsay exception, an appellate court will review for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination, whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds. *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011). See, also, *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015).

An appellate court reviews for clear error the trial court's factual findings underpinning the excited utterance hearsay exception, resolving evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011). Under a clearly erroneous standard of review, we do not reweigh the evidence but consider the judgment in a light most favorable to the successful party, resolving evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id*.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Cook*, 266 Neb. 465, 667 N.W.2d 201 (2003). See, also, *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

ANALYSIS

EXCITED UTTERANCE HEARSAY EXCEPTION

Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015); Neb. Rev. Stat. § 27-801(3) (Reissue 2008). Hearsay is not admissible except as provided by the rules of evidence or by other rules adopted by the statutes of the State of Nebraska or by the discovery rules of the Nebraska Supreme Court. *Id.*; Neb. Rev. Stat. § 27-802 (Reissue 2008). Hearsay statements can be admissible if they fall under an exception to the general rule prohibiting hearsay. One such exception exists for excited utterances. See *State v. Castillo-Zamora*, 289 Neb. 382, 392, 855 N.W.2d 14, 24 (2014); Neb. Rev. Stat. § 27-803(1) (Reissue 2008).

For a statement to be an excited utterance, the following criteria must be met: (1) There must be a startling event; (2) the statement must relate to the event; and (3) the declarant must make the statement while under the stress of the event. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015).

The true test for an excited utterance is not when the exclamation was made but whether, under all the circumstances, the declarant was still speaking under the stress of nervous excitement and shock caused by the event. *Id.* Facts relevant to whether a statement is an excited utterance include the declarant's manifestation of stress, the declarant's physical condition, and whether the declarant spoke in response to questioning. *Id.*

The declarant's answer to a question may be an excited utterance if the context shows that the statement was made without conscious reflection. *State v. Hale, supra*. Whether a party made his or her statements in response to questioning is relevant to whether those statements were spontaneous. But the focus in determining whether they constitute an excited utterance must be on whether the party made the statements without conscious reflection. *Id.; Werner v. County of Platte*, 284 Neb. 899, 824 N.W.2d 38 (2012).

Because the true test is whether the declarant was still speaking under the stress and shock caused by the event, the lapse of time is not dispositive, and the proponent does not have to produce definitive evidence of the time of the startling event. The period in which the exception applies depends on the facts of the case. *State v. Hale*, 290 Neb. at 79, 858 N.W.2d at 550. See, also, *State v. Hembertt*, 269 Neb. 840, 696 N.W.2d 473 (2005) (key requirement for excited utterance is spontaneity, which requires showing statements were made without time for conscious reflection); *State v. Castillo-Zamora*, 289 Neb. 382, 393, 855 N.W.2d 14, 25 (2014) (to be excited utterances, statements need not be made contemporaneously with the exciting cause but may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated).

The underlying theory of the excited utterance exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011). See, also, *Werner v. County of Platte, supra* (excited utterances are admissible because startling event may produce statements that are reliable, in that they are free of conscious fabrication).

Ostrum argues that the facts present in this case did not support the lower courts' finding of an excited utterance by Candice to Neal.

First, Ostrum claims that while Candice was crying and upset when she arrived at Neal's house, this was not the result of a startling event. Rather, Ostrum points to Candice's testimony that she was upset by the way Ostrum spoke to her and having to leave the residence without her younger son. Ostrum also cites Candice's testimony that the couple would argue "probably daily," implying that there was nothing startling about the circumstances of this case.

Second, Ostrum asserts that any stress caused by the situation had dissipated, and Candice had sufficient time to reflect prior to her comments to Neal. Ostrum claims that Candice had ample time to recover from their argument, emphasizing that the couple sat on the couch for 5 minutes until Candice started to calm down and before she left.

Lastly, Ostrum stresses that Candice's statements were in response to a question presented by Neal soon after her arrival, suggesting that Candice had an opportunity to consciously reflect on her answer.

Given our review of the record, we find no error by the county court in allowing Neal's testimony about Candice's statements under the excited utterance hearsay exception. The altercation between Candice and Ostrum, accompanied by Candice's fall outside, could certainly be considered a "startling event." Candice's statements to Neal clearly related to this event in that she described the altercation and her resulting injuries. In considering whether the statements were made while under the stress of the event, we note that Candice's statements to Neal were made within a few minutes of the altercation. The record shows that after the altercation and fall, Candice remained at her residence for a few minutes but then went directly from the couple's house to Neal's residence. Upon arrival at Neal's residence, Candice was crying, appeared very upset, was having difficulty breathing, and claimed to be in pain. Thus, Candice's physical condition showed signs of continued stress.

We conclude that the criteria set forth above in *State v. Hale, supra*, for Candice's statements to be considered an excited utterance were met.

The final issue is whether the fact that Candice's statements were made in response to Neal's question negates the excited utterance exception. This in turn depends upon whether Candice had an opportunity for conscious reflection between the assault and her response to Neal's question. Notably, Neal asked Candice what happened immediately upon Candice's arrival at his house, causing her to respond before she had an opportunity to calm down. Given the relatively short period of time between the altercation and Candice's statements to Neal, together with Candice's manifestations of continued stress upon arrival at Neal's house, we conclude that Candice's statements were spontaneous and were made without conscious reflection.

Therefore, Candice's statements to Neal, describing the nature of the assault, were admissible under the excited utterance hearsay exception. The district court did not err in affirming the county court's admission of the statements.

Ostrum's first assignment of error is without merit.

The State argues on appeal that Ostrum's second assignment of error, regarding the denial of his motion for a directed verdict, was waived because Ostrum did not include the ordinance in the record before us.

When a defendant appeals a conviction and sentence under a municipal ordinance, claiming that the evidence is insufficient for a conviction and that a sentence is excessive, an appellate court's consideration of the assignments of error requires an examination of the specific ordinance involved. *State v. King*, 239 Neb. 853, 479 N.W.2d 125 (1992).

The appellant has the responsibility to include the ordinance in the record which is transmitted to the appellant court. *State v. Bush*, 254 Neb. 260, 266, 576 N.W.2d 177, 180, (1998). See, also, *State v. Pillard*, 16 Neb. App. 99, 106, 741 N.W.2d 441, 447 (2007). When an ordinance charging an offense is not properly made a part of the record, an appellate court presumes the existence of a valid ordinance creating the offense charged, and an appellate court will not otherwise take judicial notice of the ordinance. *State v. King, supra.* In the absence from the record of the applicable municipal ordinance, an appellate court presumes that the evidence sustains the findings of the trial court and that a sentence is within the limits set out in the applicable ordinance. *Id.* See also, *State v. Bush, supra; State v. Abbink*, 260 Neb. 211, 616 N.W.2d 8 (2000); *State v. Ruisi*, 9 Neb. App. 435, 616 N.W.2d 19 (2000).

However, the Nebraska Supreme Court has also held that the appellant's responsibility to include an ordinance in the record can be satisfied through the inclusion of a long-form criminal complaint in the transcript. *State v. Hill*, 254 Neb. 460, 464, 577 N.W.2d 259, 263 (1998). In *Hill*, the Court stated that "in the absence of any showing to the contrary, we assume that the material allegations in the complaint reflect the substantive content of the ordinances which (the defendant) was charged with violating . . ." *Hill*, 254 Neb. at 464-65, 577 N.W.2d at 263.

While the record on appeal does not contain a copy of the ordinance by which Ostrum was charged, Section 9.12.010, it does contain the long-form criminal complaint, as quoted from above, in the transcript. Thus, the record sufficiently establishes the basis by which Ostrum was convicted to the degree necessary for this court to address Ostrum's assignment of error regarding failure to direct a verdict. We decline to find that Ostrum has waived this assigned error. Therefore, we proceed to consider whether the county court erred in failing to direct a verdict in Ostrum's favor and whether the district court erred in affirming this decision.

Ostrum argues that, absent Neal's inadmissible hearsay testimony regarding Candice's statements, there is no evidence to demonstrate that he violated Lincoln Municipal Code Section 9.12.010, "let alone evidence showing guilt beyond a reasonable doubt."

Having determined that Candice's statements describing the assault to Neal were admissible under the excited utterance hearsay exception, and viewing the evidence in a light most favorable to the State, we conclude that the evidence was sufficient to support Ostrum's conviction. The record contains evidence that Ostrum physically forced Candice from their home, causing her to fall and to sustain bodily harm.

Ostrum's second assignment of error is without merit.

EXCESSIVE SENTENCE

Ostrum asserts that the district court erred in affirming the excessive sentence imposed by the county court. The State argues that Ostrum has waived this assigned error by virtue of his failure to include the sentencing ordinance in the record.

Initially, we note that the ordinance by which Ostrum was sentenced to probation is absent from the record. As previously noted, in the absence from the record of the applicable municipal ordinance, an appellate court presumes that the evidence sustains the findings of the trial court and that a sentence is within the limits set out in the applicable ordinance. *State v. King*, 239 Neb. 853, 479 N.W.2d 125 (1992). Therefore, we presume that Ostrum's sentence is within the appropriate limits of the ordinance. Even so, the question remains whether the county court abused its discretion in sentencing Ostrum.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, an appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). In imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors. *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

Ostrum's only argument in connection with this assigned error is that the trial judge made no findings with regard to the above factors and the court's failure to consider and weigh the factors mandates that the sentence be vacated and the case remanded for sentencing. The record shows that the county court had the benefit of a presentence investigation report and received letters submitted by Ostrum at the sentencing hearing. It is apparent from the record of the sentencing hearing that the court had reviewed this information prior to announcing its sentence. Upon our review, we find that the sentence of probation imposed by the county court, and affirmed by the district court, did not amount to an abuse of discretion.

Ostrum's final assignment of error is without merit.

CONCLUSION

Upon our review, we find the district court sitting as an intermediate appellate court correctly concluded that the county court did not err in admitting Neal's testimony regarding Candice's statements under the excited utterance exception to the hearsay rule. Further, because the evidence was sufficient to support Ostrum's conviction, the county court did not err in overruling his motion for directed verdict. Finally, there was no abuse of discretion in the sentence imposed. Therefore, we affirm.

AFFIRMED.