IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. COLLINS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAEJON L. COLLINS, APPELLANT.

Filed June 2, 2026.   No. A-25-251.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Christopher Eickholt, of Eickholt Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Daejon L. Collins was convicted and sentenced in the district court for Lancaster County for terroristic threats, use of a firearm to commit a felony, possession of a firearm while committing a drug offense, operation of a motor vehicle to avoid arrest, domestic assault in the third degree, driving under the influence (DUI), and tampering with a witness or informant. Collins appeals, claiming ineffective assistance of counsel, that the evidence was insufficient to convict him of the charges of terroristic threats and use of a firearm, that his sentences were excessive, that the district court erred in conducting a meeting off-the-record and permitting the State to offer the undisclosed evidence at trial, that the prosecutor committed prosecutorial misconduct, and lastly, that the district court erred in denying Collins' motion for a new trial. For the reasons stated herein, we affirm.

- 1 -

## II. BACKGROUND

On January 16, 2025, the State filed an information against Collins. The information charged Collins with (1) terroristic threats; (2) use of a firearm to commit terroristic threats; (3) delivering or possessing with intent to deliver cocaine, while possessing a firearm; (4) possession of money violating drug laws; (5) operation of a motor vehicle to avoid arrest; (6) domestic assault in the third degree; (7) DUI, second offense; and (8) tampering with a witness. Collins pled not guilty to the charges, and a jury trial was set for a later date.

The charges arose from an incident that occurred on March 1, 2024, in the early morning hours. Courtney Thomas, the victim in this case, went to Collins' residence and fought Collins and Collins' girlfriend. Thomas then left Collins' residence and went to her home. During that time, Thomas and Collins exchanged text messages. Collins informed Thomas that he was coming to her home, and Thomas informed Collins that she was going to call the police if he came to her home. When Collins arrived, Thomas called 911 and told the operator that Collins threatened to shoot her. After police arrived, Collins fled the scene in a Chevrolet Trailblazer.

At some point, the vehicle crashed and Collins fled on foot. During the pursuit, officers believed that Collins was armed and deployed a taser so that he would be incapacitated and unable to use a firearm. However, the taser had no effect, but Collins was eventually taken into custody. After Collins was apprehended, he dropped his phone, and it was turned in as evidence. The footage of the chase was admitted into evidence.

When Collins was taken into custody, he was transported to the hospital because of department policy due to the taser being deployed. After Collins was medically cleared, he was transported to Lancaster County jail, where he was investigated for a possible DUI. Collins took a breath test and the result was .104. An officer determined that this reading showed Collins was under the influence of alcohol and was not safe to drive.

The vehicle Collins had been driving was also searched by officers. Officers observed a clear plastic bag with white powder in the center console of the vehicle. Officers also found two empty alcohol bottles on the passenger seat, as well as a firearm in the passenger door pocket. Officers located bond receipts from February 6, 2024, belonging to Collins, in the front seat of the vehicle. Later, officers determined the vehicle was registered to one Chase Gutierrez, but the registration for the vehicle had expired and Gutierrez had purchased a different vehicle, which he had registered.

The firearm and the ammunition were tagged for further testing. The crime lab determined it was highly likely that Collins' fingerprints were on the magazine of the firearm, after comparing the collected prints to Collins' prints within their database. Collins' DNA was collected and compared to swabs from the firearm. The lab technician found that Collins was likely a contributor to the DNA on the firearm.

The clear plastic bag from the vehicle was tested and lab technicians determined that the substance was approximately 24.71 grams of cocaine. Officers were then able to review data from Collins' phone through a "Cellebrite report." Through the Cellebrite report, officers were able to determine that Collins was likely involved in drug transactions, as messages revealed that Collins had various people reaching out to him, asking for drugs, and sending him money since approximately October 2022. Police also collected $396 from Collins' person.

After Collins was placed in jail, he utilized the jail text message and phone call system to contact Thomas, his girlfriend, and his brother. During these phone calls, Collins told Thomas he was caught with drugs and a gun, he crashed his car, and he and his brother owed people money. Collins also asked Thomas to ignore her subpoena so that his charge could get dismissed. Collins also spoke with his brother about the cocaine found in the car and said that he had about 30 grams left. Collins described what happened the night prior, saying, "[S]he busted my damn windshield, and that's why I went after a bitch."

Before trial, Collins filed a motion to suppress any and all physical evidence obtained from him or any place in which he had an expectation of privacy. On October 1, 2024, there was a hearing on this motion. Collins argued that the Lincoln police department did not have a search warrant and did not have permission to search the vehicle. Following the hearing, the court found the evidence to be credible in all respects as the "warrantless" search of the vehicle "was done properly pursuant to an inventory search." The court also said it was properly done pursuant to a search incident to arrest, as Collins was a recent occupant of the vehicle, and the vehicle was in connection to an investigation of a recent crime. The court also found that Collins abandoned the vehicle and as a result had no expectation of privacy in it, and that the officers had a reasonable belief and duty to get it out of traffic. The court overruled the motion.

Also, prior to trial, Collins filed a motion in limine to limit and prohibit any and all witness testimony regarding the 911 call, any Cellebrite material, any jail calls by Collins, any "dashcam" video which pertains to Collins, and any and all reports that verify, identify, or authenticate or attempt to identify Collins' voice or the voice of Thomas. The State also filed a motion in limine to determine the admissibility of statements made by Thomas and Collins in a recorded 911 call. The State argued that the 911 call was made for "more of purposes for safety of the scene" and Thomas' statements should be admissible as present sense impression and excited utterance. The court sustained the State's motions in limine.

On January 13, 2024, a jury trial was held and evidence at the trial established that on March 1, 2024, there was an altercation at Collins' residence among Collins, Collins' girlfriend, and Thomas, the victim.

At trial, Collins testified on his own behalf. Collins claimed that Gutierrez was with him in the vehicle, where Guiterrez had a gun pointed at Collins. Collins stated they struggled over the gun and Gutierrez fled once the vehicle crashed. However, officers who first arrived on the scene testified that they did not see another person in the vehicle. Collins also admitted he threatened Thomas but said he did not have a gun when he made those threats.

Thomas testified and said that she gave inaccurate information to officers about a gun because she was upset and wanted to get Collins in trouble. Thomas stated she did not go to her deposition, that she told officers that Collins and Collins' girlfriend jumped her, and that on the recorded audio call, Collins threatened her by saying he would "blow your ass up" and that he would "shoot it out with the police."

The matter was submitted to the jury, and the jury found Collins guilty of terroristic threats (count 1), use of a firearm to commit a felony (count 2), possession of a firearm with intent to deliver or possess drugs (count 3), operation of a motor vehicle to avoid arrest (count 5), domestic assault in the third degree (count 6), DUI (count 7), and tampering with witnesses (count 8). The jury found Collins not guilty of possession of money violating drug laws (count 4). The court

accepted the jury's verdict and found Collins guilty of counts 1, 2, 3, 5, 6, 7, and 8. The court ordered a presentence investigation (PSI) and set sentencing for February 26, 2025.

Prior to sentencing, Collins' trial counsel filed a motion to withdraw, alleging that Collins had asked counsel to withdraw, that Collins was unhappy with counsel's actions at trial, and that counsel thought it would be in the best interests of Collins if he retained new counsel. Following the filing of this motion, Collins submitted several other handwritten pro se motions. On February 26, 2025, the court held a hearing for enhancement and sentencing. However, Collins' trial counsel indicated to the court that he had filed a motion to withdraw, that he had not reviewed the PSI with Collins, and that Collins had not contacted him. When asked, Collins indicated that he would proceed pro se and Collins' trial counsel was appointed as standby counsel. On March 4, Collins filed a motion for a new trial, a motion for continuance of sentencing and for verdict to be set aside, and a motion for appointment of counsel.

On March 5, 2025, the court addressed Collins' motions, including his motion for a new trial, his motion for appointment of counsel, and his motion for continuance of sentencing. In the motions, Collins did not specifically state the grounds for which he wanted a new trial other than that there was insufficient evidence and newly discovered evidence. The court dismissed the motions, stating, "[T]he grounds set forth in that motion are grounds that are outside the statutory time frame in which to file a motion for new trial" and in the order denying motions, the court determined that the motion failed to set forth sufficient facts. That motion was dismissed. The court also "dismissed for the same reasons" the motions to continue the sentencing and for the verdict to be set aside.

The court began sentencing, having reviewed and considered Collins' PSI. The court noted that Collins had several driving offense convictions, including a prior DUI, and several assaultive charges, which were mostly domestic violence related. The court said that four out of the five domestic charges were dismissed because the victim was uncooperative or could not be located, but there was one conviction. The court stated that Collins had prior convictions for obstructing a police officer, operating a motor vehicle to avoid arrest, and scored high on his risk assessment to reoffend.

The court, having regarded the nature and circumstances of this crime, the history, character, and conditions of Collins, found that imprisonment of Collins was necessary for the protection of the public, because a lesser sentence would depreciate the seriousness of his crime and promote disrespect for the law. The court subsequently sentenced Collins to consecutive terms of 3 to 3 years' imprisonment on count 1; 10 to 15 years' imprisonment that included a mandatory minimum of 5 years' imprisonment on count 2; 10 to 15 years' imprisonment that included a mandatory minimum of 5 years' imprisonment on count 3; 2 to 2 years' imprisonment, with a 2- year license revocation, on count 5; 1 to 1 year's imprisonment on count 6; 6 months' imprisonment, with an 18- month license revocation, on count 7; and 10 to 15 years' imprisonment on count 8. The court gave Collins credit for 247 days already served.

Collins now appeals.

### III. ASSIGNMENTS OF ERROR

Collins assigns, restated and reordered, that (1) the evidence was insufficient to convict him of the charges of terroristic threats and use of a firearm, (2) his sentences were excessive, (3)

the court erred in conducting a meeting off-the-record and permitting the State to offer the non-disclosed evidence at trial, (4) the prosecutor committed prosecutorial misconduct, (5) the district court erred in denying Collins' motion for a new trial, and (6) his trial counsel was ineffective in multiple respects.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025).

Consideration of plain error occurs at the discretion of an appellate court. *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.* Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Mzra*, 302 Neb. 931, 926 N.W.2d 79 (2019), *disapproved on other grounds, State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025).

An appellate court applies a de novo standard when reviewing a trial court's dismissal of a motion for new trial without conducting an evidentiary hearing, but it applies an abuse of discretion standard of review to appeals for motions for new trial denied after an evidentiary hearing. *State v. Garcia*, 318 Neb. 228, 14 N.W.3d 525 (2024).

An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law. *State v. Kruger, supra.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.* Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Collins assigns that the evidence was insufficient to support a guilty verdict for the use of a firearm to commit a felony charge and the terroristic threats charge. Regarding the use of a firearm to commit a felony charge, Collins argues that there was a lack of evidence presented at trial that Collins was possessing or physically pointing a firearm at Thomas. Regarding terroristic threats, Collins argues that his confrontation with Thomas was an extension of an argument the two had earlier, rather than a threat.

A conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Osborne*, 313 Neb. 726, 986 N.W.2d 65 (2023). An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh evidence; such matters are

for the finder of fact. *State v. Kruger, supra.* The jury heard testimony from Thomas, Collins, and other witnesses, and reviewed all the evidence. It was for the jury to determine the credibility and the weight of the witnesses' testimony.

Under Neb. Rev. Stat. § 28-1205 (Reissue 2016), any person who uses a firearm to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony. The section also describes that possession of a deadly weapon may be proved through evidence demonstrating either actual or constructive possession of a firearm, during, immediately prior, or immediately after the commission of a felony. § 28-1205(5). Under Neb. Rev. Stat. § 28-311.01 (Reissue 2016), a person commits terroristic threats if he or she threatens to commit any crime of violence with the intent to terrorize another.

Evidence presented at trial supports both convictions. On the recorded 911 call, Thomas told emergency services that Collins had a revolver, that he pointed a gun at her, and that he threatened to shoot her. Collins can also be heard in the recording threatening to shoot Thomas. Further, Collins' blood and fingerprints were found on the firearm within the vehicle.

When viewing the witness testimony and evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. A rational trier of fact could have found that Collins made threatening statements with the intent of terrorizing Thomas, while constructively possessing a weapon and claiming to Thomas that he had a gun. A rational trier of fact could have disbelieved Collins' testimony that he did not know the gun was there or that it was Gutierrez's gun, as three different officers testified to the passenger seat being empty. Because sufficient evidence supports the jury's finding that Collins intended to terrorize Thomas, a rational trier of fact could have also found that Collins used a deadly weapon while committing terroristic threats. We find that sufficient evidence was adduced at trial to sustain Collins' convictions.

### 2. EXCESSIVE SENTENCES

Collins assigns that the sentences imposed by the district court were excessive and constituted an abuse of discretion. Collins argues that the district court failed to meaningfully consider the circumstances surrounding the offenses, the nature of the offenses, and Collins' personal circumstances. Collins also argues that the district court abused its discretion by requiring his sentences to be served consecutively rather than concurrently.

It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. *State v. Geller*, 318 Neb. 441, 16 N.W.3d 365 (2025). This is true even when the crimes arise out of the same incident. *Id.*

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the

- 6 -

sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Collins was convicted of two Class IC felonies, a Class II felony, a Class IIIA felony, a Class IV felony, a Class I misdemeanor, and a Class W misdemeanor. A Class IC felony is punishable by a mandatory minimum of 5 years' up to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). A Class II felony is punishable by a minimum 1 year's imprisonment to a maximum of 50 years' imprisonment. *Id.* A Class IV felony is punishable by 0 to 2 years' imprisonment. *Id.* A Class I misdemeanor is punishable by up to 1 year's imprisonment. Neb. Rev. Stat. § 28-106 (Reissue 2016). A Class W misdemeanor is punishable by 60 days' imprisonment and a $500 fine for the first conviction, 6 months' imprisonment and a $500 fine for the second conviction, and 1 year's imprisonment and a $1,000 fine for the third conviction. *Id.*

On the Class IC felonies, Collins was sentenced to 10 to 15 years' imprisonment that includes a mandatory minimum of 5 years. On the Class II felony, Collins was sentenced to 10 to 15 years' imprisonment. On the Class IIIA felony, Collins was sentenced to 3 to 3 years' imprisonment. On the Class IV felony, Collins was sentenced to 2 to 2 years' imprisonment. On the Class I misdemeanor, Collins was sentenced to 1 to 1 year's imprisonment. On the Class W misdemeanor, as it was Collins' second conviction, he was sentenced to 6 months' imprisonment with an 18-month license revocation. All sentences imposed were within the applicable statutory ranges.

During the sentencing hearing, the district court highlighted the factors it considered, including Collins' age, criminal history, and assessment scores. The record also reflects that the district court reviewed and considered the PSI and all arguments made at sentencing, which included information for all the factors that a court is supposed to consider at sentencing. Mindful that it is not our function to conduct a de novo review of the record to determine what sentence we would impose, see *State v. Geller, supra*, we find that the district court did not abuse its discretion in sentencing Collins.

### 3. OFF-THE-RECORD DISCUSSION

Next, Collins assigns the district court erred by conducting an off-the-record discussion with the parties during trial from which the State was permitted to offer evidence of text messages from the jail that had not been previously disclosed to Collins. Collins alleges that this discussion was about the disclosure of text messages that Collins sent to Thomas while incarcerated.

The State argues that this assignment should not be considered on appeal because the record is insufficient, but regardless of the record, Collins suffered no prejudice. Generally, it is the appellant's burden to present a record to support the errors assigned, and in the absence of a complete bill of exceptions, it is presumed that an issue of fact raised by the pleadings was sustained by the evidence and that it was correctly determined. *In re Estate of Weeder*, 318 Neb. 393, 16 N.W.3d 137 (2025). Other than Collins' assertion that there was a meeting regarding undisclosed "surprise" evidence, there is no indication in the record that this meeting took place; therefore, the record is insufficient to review this on appeal. However, even though we have no record of this alleged off-the-record discussion, Collins did not object at trial to the evidence introduced as a result of this discussion. Collins waived this objection by not raising it on the

- 7 -

record at trial, and therefore the district court did not abuse its discretion. See *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009).

Collins also assigns, but fails to argue, that his trial counsel was ineffective for failing to move for a mistrial, request a continuance, or maintain a record of the alleged off-the-record discussion. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). Because Collins does not argue this assigned error, we do not address it.

### 4. PROSECUTORIAL MISCONDUCT

Collins assigns that the prosecutor committed prosecutorial misconduct for arguing, claiming, or insinuating that the vehicle belonged to Collins when the prosecutor knew the vehicle was registered to another person. Collins also assigns that his trial counsel was ineffective for failing to object to those statements in both opening and closing argument. Collins' main complaint is that in opening statements and in closing argument the prosecutor argued that the vehicle that Collins was in as he fled was his vehicle, even though the State knew that the vehicle was owned and registered to Gutierrez.

When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct. *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024). Prosecutorial misconduct cannot be neatly defined, but generally it encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. See *id.* A prosecutor's conduct that does not mislead and unduly influence the jury is not misconduct. *Id.*

Then, if the appellate court concludes that a prosecutor's acts were misconduct, the court next considers whether the misconduct prejudiced the defendant's right to a fair trial. *Id.* Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infects the trial that the resulting conviction violates due process *Id.* Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial. See *id.* In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, we consider the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury, (2) whether the conduct or remarks were extensive or isolated, (3) whether defense counsel invited the remarks, (4) whether the court provided a curative instruction, and (5) the strength of the evidence supporting the conviction. *Id.*

As an initial matter, we observe that Collins did not move for a mistrial based on the alleged prosecutorial misconduct. The Supreme Court has discussed the implications of such failure to move for a mistrial, ultimately concluding that "we have actually treated a defendant's failure to move for a mistrial on the basis of alleged prosecutorial misconduct more like a forfeiture by conducting a plain error review in such circumstances." *Id.* at 544, 10 N.W.3d at 739. Therefore, we review the two statements for plain error.

We find no plain error here. The prosecutor did not violate legal or ethical standards in various contexts or undermine Collins' right to a fair trial. During opening statements, the prosecutor said that on March 1, 2024, Thomas "cracked the windshield to [Collins'] vehicle, a

Chevy Trailblazer." The prosecutor also said that when "police arrived while . . . Collins was still there and observed him enter his vehicle."

During closing arguments, the prosecutor said that "Thomas then smashed Collins' windshield." The prosecutor also said, "It was the busting of the windshield of the vehicle belonging to . . . Collins that started the next chain of events into motion." The prosecutor argued that Collins was "mad that she has busted the windshield of his vehicle." The prosecutor went on to say that Collins lost control and crashed his vehicle and damaged his own vehicle. Lastly, the prosecutor argued that Collins was going to say that it was not Collins' vehicle, but the State contended it was his vehicle, and that there was a copious amount of evidence to prove that it was, such as his text messages, his personal documents, and his own words in the 911 call.

The statements did not mislead or unduly influence the jury because the State presented an argument that Collins had exclusive use and operation of the vehicle and there was sufficient evidence presented at trial to interpret that Collins was the owner of the vehicle. Therefore, it was not misleading for the State to argue that interpretation.

Even if the prosecutor's statements were prosecutorial misconduct, which we do not decide here, Collins would be unable to show that such comments were prejudicial because whether Collins was the owner of the vehicle was not an element of any conviction, but, rather, at the time of the incident, Collins had exclusive use and operation of the vehicle and there was other evidence presented to the jury to support this finding, such as Collins' bond receipts from a month prior to the incident, his text messages, DNA evidence, fingerprint evidence, and his own statements heard on the 911 call. As a result, we conclude that the prosecutor's statements did not constitute prosecutorial misconduct and were not prejudicial as they did not mislead or unduly influence the jury, the remarks were isolated, and there was other strong evidence to support the conviction.

Collins also argues that his trial counsel was ineffective for failing to object to these statements when they were made. Because we have concluded the prosecutor's statements did not amount to misconduct and were not prejudicial, counsel was not ineffective in failing to object. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022) (as matter of law, counsel cannot be ineffective for failing to make meritless motion, objection, or argument).

### 5. MOTION FOR NEW TRIAL

Collins assigns restated that the district court erred in denying his post-verdict motion for new trial without a hearing. Collins argues that he filed a series of pro se motions and documents with the district court on February 24, 2025, including a motion for new trial.

At the time Collins filed this set of pro se motions on February 24, 2025, he was represented by counsel. Prior to this, his counsel filed a motion to withdraw that the district court did not rule on until February 26, meaning that Collins was not proceeding pro se at the time those motions were filed. The district court explained that it did not admit filings from anyone other than counsel. After February 26, Collins was pro se, and he filed an identical set of motions on March 4.

Neb. Rev. Stat. § 29-2101 (Reissue 2016) states that:

A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following grounds affecting materially his or her substantial rights: (1) Irregularity in the proceedings of the court, of the prosecuting attorney, or of the witnesses for the state or in any order of the court or abuse of discretion by which the

defendant was prevented from having a fair trial; (2) misconduct of the jury, of the prosecuting attorney, or of the witnesses for the state; (3) accident or surprise which ordinary prudence could not have guarded against; (4) the verdict is not sustained by sufficient evidence or is contrary to law; (5) newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial; (6) newly discovered exculpatory DNA or similar forensic testing evidence obtained under the DNA Testing Act; or (7) error of law occurring at the trial.

Neb. Rev. Stat. § 29-2103 (Reissue 2016) requires that a motion for new trial state the grounds under § 29-2101 that are the basis for the motion and shall be supported by evidence as provided in Neb. Rev. Stat. § 29-2102 (Reissue 2016). Section 29-2103 also requires that a motion for a new trial based on the grounds set forth in (1), (2), (3), (4), or (7) be filed within 10 days after the verdict was rendered. Section 29-2103 also states that for newly discovered evidence that the motion should be filed within a reasonable time after the discovery of the new evidence. Section 29-2102 allows a court to dismiss the motion without a hearing if the motion for new trial and supporting documents fail to set forth sufficient facts.

Collins set forth multiple reasons in his motion for a new trial but did not specifically identify which of the grounds his allegations fell under except for insufficient evidence to support his verdict and newly discovered evidence. However, this motion was not filed within 10 days of the verdict in order to allege insufficient evidence to support the verdict under § 29-2103, and we agree with the district court that in regard to Collins' claim of newly discovered evidence, his motion and affidavit in support therein did not set forth sufficient facts to support a showing that, if true, it would materially affect his substantial rights in order to receive a hearing on that issue. Therefore, the district court did not err in denying Collins' motion for new trial without an evidentiary hearing.

Collins also alleges that his trial counsel was ineffective for failing to move for a mistrial or request a continuance or to maintain a record of a discussion during trial in which the State was able to offer evidence that had not been disclosed prior to trial. However, Collins assigns this error but fails to argue it. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). Therefore, because Collins does not argue this assigned error, we do not need to address it on appeal.

### 6. INEFFECTIVE ASSISTANCE OF COUNSEL

Collins assigns 10 claims of ineffective assistance of counsel. Restated and reordered, Collins contends his trial counsel was deficient in (1) failing to file a motion to suppress the search of his phone, (2) failing to object to the introduction of exhibit 9, (3) failing to object to or move to exclude exhibit 10, (4) failing to object to or move to exclude exhibit 16, (5) failing to object to or move to exclude exhibit 52, (6) failing to object to the improper cross-examination of Thomas, (7) failing to object to fingerprint evidence, and (8) that the cumulative deficient performance of trial counsel was ineffective assistance. For completeness, Collins also assigns restated that his trial counsel was ineffective for failing to move for a mistrial due to an alleged off-the-record

conversation and failure to move for a mistrial due to prosecutorial misconduct, which were discussed earlier with other assignments of error.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025). To raise an ineffective assistance of counsel claim on direct appeal, the defendant must allege deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record on direct appeal is sufficient to conclusively determine a claim of ineffective assistance of counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires examination of facts not contained in the record. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Vazquez, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *Id.*

When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *Id.* There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id.* And finally, in determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case. *Id.*

(a) Motion to Suppress

In his first claim, Collins assigns trial counsel was ineffective for failing to file a motion to suppress a forensic search of a phone seized from him. This claim pertains to trial counsel's lack

of a specific motion to suppress a forensic search. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018), *disapproved on other grounds, State v. Falcon*, 319 Neb. 911, 25 N.W.3d 462 (2025). We conclude that the record on direct appeal is insufficient for us to resolve this claim, and we therefore do not reach it.

### (b) Failure to Object to Exhibit 9 – Emergency Call

Collins assigns that trial counsel provided ineffective assistance of counsel for failing to object on confrontation grounds to the introduction of the emergency call, exhibit 9, made by Thomas. This claim pertains to trial counsel's lack of objection on confrontation grounds to the recorded 911 call.

The Confrontation Clause, U.S. Const. amend. VI, which overlaps with the hearsay rules, provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." Neb. Const. art. I, § 11, provides, in relevant part: "In all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face. . . ." The Nebraska Supreme Court has held that the analysis under article I, § 11, is the same as that under the Sixth Amendment to the U.S. Constitution. *State v. Hembertt*, 269 Neb. 840, 696 N.W.2d 473 (2025).

Collins specifically argues that the statements made by Thomas, the emergency service call taker, and responding officers were testimonial as they were recorded for use in criminal proceedings. Where "testimonial" statements are at issue, the Confrontation Clause demands that such hearsay statements be admitted at trial only if the declarant is unavailable and there had been a prior opportunity for cross-examination. *Id.* The inquiry is whether, under the circumstances, the declarant intended to bear testimony against the accused. *Id.* The determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial. *Id.*

However, we have previously held that statements made during 911 calls, which are made to enable police assistance to meet an ongoing emergency, are not testimonial. See *State v. Wright*, 33 Neb. App. 929, 29 N.W.3d 830 (2026). The record reflects that the statements made during the 911 call included statements that Collins threatened to shoot Thomas and that Collins would shoot at police officers. Further, there was a lack of formality to the questioning that suggested the 911 call's primary purpose was simply to address the ongoing emergency as described by Thomas. Because the circumstances of the call objectively indicate that the primary purpose of the call was to enable police assistance to meet an ongoing emergency, the statements made during the 911 call were not testimonial. See *id.*

It is not ineffective for trial counsel to fail to make a meritless claim. *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025). Because a potential objection to the 911 call would have been overruled, trial counsel's failure to object was not ineffective assistance of counsel.

### (c) Exhibit 10 – Body Camera Footage

Collins assigns that trial counsel provided ineffective assistance of counsel for failing to object to the introduction of the bodycam video of Officer Fowler, exhibit 10, which depicts a conversation between Fowler and Thomas.

The Supreme Court has long held that a generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025). More recently, the Supreme Court has explained that an assignment is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks. See *id*. A claim of ineffective assistance of trial counsel that is insufficiently stated is no different than a claim not stated at all and will not prevent the procedural bar accompanying the failure to raise all known or apparent claims of ineffective assistance of trial counsel. *Id*.

However, in *Rupp*, the Supreme Court held that the assignment of error must, standing alone, permit an appellate court to determine if the claim can be decided upon the trial record and permit a court to later recognize that the claim was raised on direct appeal. See *id*. This requires a description of the specific conduct alleged to constitute deficient performance. *Id*. The argument section of the brief is to elaborate on these claims by discussing legal authority and its application to the trial record, not to set forth, for the first time, what the allegedly deficient act was. *Id*. Any claim of ineffective assistance of counsel alleging deficient conduct must be more than generalities of inadequate preparation or failures to introduce beneficial evidence. *Id*.

This allegation of ineffective assistance of counsel has not been sufficiently pled. Collins claims counsel was ineffective for failing to object, but does not provide a specific description of what the objection should have been. Without scouring the brief, we are unable to discern the allegedly deficient performance that made Collins' trial counsel ineffective. See *State v. Mzra*, 302 Neb. 931, 926 N.W.2d 79 (2019), *disapproved on other grounds, State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). Thus, we do not address this assigned error, and it is not preserved for postconviction review.

(d) Exhibit 16 – Body Camera Footage

Collins assigns that trial counsel provided ineffective assistance of counsel for failing to object or move to exclude exhibit 16, which depicts a body camera video of the police foot chase and arrest of Collins. Collins argues that trial counsel should have objected on relevance grounds or unfair prejudice grounds.

This allegation of ineffective assistance of counsel has not been sufficiently pled. Collins' assignment of error lacks the requisite specificity, as Collins' vague and generalized assignment does not identify in his assignment of error the legal basis for an objection to the body camera footage.

Without scouring the brief, we are unable to discern the allegedly deficient performance that made Collins' trial counsel ineffective. See *id*. Thus, we do not address this assigned error, and it is not preserved for postconviction review.

(e) Exhibit 52 – Cellebrite Report

Collins assigns that trial counsel provided ineffective assistance of counsel for failing to object, or move to exclude, or move to limit, or contest in any manner evidence from exhibit 52, and related testimony, a compilation of uncharged crimes, prior bad acts, and non-relevant evidence and unfairly prejudicial evidence regarding other criminal acts and bad acts obtained

from a search of a phone recovered from Collins. We conclude that the record on direct appeal is insufficient for us to resolve this claim, and we therefore do not reach it.

### (f) Failure to Object to Improper Cross-Examination

Collins assigns that trial counsel provided ineffective assistance for failing to object to improper cross-examination and questioning of Thomas.

This allegation of ineffective assistance of counsel has not been sufficiently pled. Collins' assignment of error lacks the requisite specificity, as Collins' vague and generalized assignment of error does not provide a specific description of what the objection should have been to the cross-examination of Thomas.

Without scouring the brief, we are unable to discern the allegedly deficient performance that made Collins' trial counsel ineffective. See *State v. Mzra, supra, disapproved on other grounds, State v. Hagens, supra*. Thus, we do not address this assigned error, and it is not preserved for postconviction review.

### (g) Failure to Object to Fingerprint Evidence

Collins assigns that trial counsel provided ineffective assistance of counsel for failing to object to fingerprint evidence.

This allegation of ineffective assistance of counsel has not been sufficiently pled. Collins' assignment of error lacks the requisite specificity, as Collins' vague and generalized assignment does not identify in his assignment of error the legal basis for an objection to the fingerprint evidence.

Without scouring the brief, we are unable to discern the allegedly deficient performance that made Collins' trial counsel ineffective. See *State v. Mzra*, 302 Neb. 931, 926 N.W.2d 79 (2019), *disapproved on other grounds, State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). Thus, we do not address this assigned error, and it is not preserved for postconviction review.

### (h) Cumulative Deficient Performance

For the reasons discussed, we conclude that the record on direct appeal is insufficient to permit us to consider Collins' first and fifth claims of ineffective assistance of trial counsel. Accordingly, the record is insufficient for us to consider the remaining claim of cumulative deficient performance.

### VI. CONCLUSION

We cannot determine on direct appeal whether counsel was ineffective in certain regards. We otherwise affirm Collins' convictions and sentences.

AFFIRMED.